[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 7, 2004
THOMAS K. KAHN
CLERK

_____

No. 03-13868

_____

D.C. Docket No. 02-00010-CV-GET-1

WILLIAMS-RUSSELL & JOHNSON, INC.,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(June 7, 2004)**

Before EDMONDSON, Chief Judge, HULL, Circuit Judge, and EDENFIELD[*],
District Judge.

EDENFIELD, District Judge:

---

[*] Honorable B. Avant Edenfield, United States District Judge for the Southern District of Georgia,
sitting by designation.

## I.  Introduction

Appellant Williams-Russell & Johnson, Inc. ("WRJ"), brought this action to recover from the Internal Revenue Service ("IRS") an "overpayment" tax refund that WRJ claims it is due under 26 U.S.C. § 7422.  The district court dismissed the case for lack of subject-matter jurisdiction, finding that there was no overpayment and in any event the claim was time-barred.  WRJ appeals.

In that the tax code can be difficult to follow,  we first pause to explain the general framework that applies to this situation.  Companies like WRJ must pay employment taxes over time.  The IRS is supposed to keep track of these payments and periodically make "assessments" which determine and inform taxpayers what they actually owe (ideally for both sides, this amount reflects what the taxpayer has paid, or thinks he should have paid).

But, the IRS makes mistakes, and so it does not always get around to timely assessing liability.  The question for us, then, is what effect such a mistake (a late assessment) has on a taxpayer's liabilities and rights.

## II.  Background

During 1993-1995 WRJ filed monthly, rather than the usual quarterly, employment tax returns.  Similarly, it deposited its employment taxes on a monthly basis. This required the IRS to, on a quarterly basis, consolidate the returns and make

proper assessment of WRJ's tax liability. But the IRS failed to discharge those duties.

In fact, it did not assess liability for those years until 6/99. It concedes, then, that those 1993-1995 assessments were made beyond 26 U.S.C. § 6501's three-year statute of limitations period for collection and assessment.[1] So, the IRS admits, it cannot collect any additional employment taxes from WRJ even though WRJ had, in fact, underpaid its taxes for the subject years. *See Ewing v. United States,* 914 F.2d 499, 503-04 (4th Cir. 1990).

Not content with its good fortune, however, WRJ wants more. Reasoning that it would have gotten away without paying anything had it simply not paid its taxes (because the IRS failed to timely make assessments for 1993-1995), it argues that late assessment also "entitles" it to recover those taxes it had already paid and otherwise owed during those years. In fact, it labels them "overpayments" within the meaning of 26 U.S.C. § 6402(a). In support, WRJ cites 26 U.S.C. § 6401(a), which provides that

> "overpayment" includes that part of the amount of the
> payment of any internal revenue tax which is assessed or

---

[1] 26 U.S.C. § 6513(c)(1) provides that any return filed before 4/15 shall be considered as filed on 4/15. Accordingly, the last of WRJ's returns was "filed" on 4/15/96. Under § 6501, then, the IRS had until 4/15/99 to assess taxes for 1995, and one and two years earlier, respectively for 1994 and 1993.

3

> collected after the expiration of the period of limitation properly applicable thereto.

Accordingly, WRJ applied for a refund -- first on 1/27/00 and then again on 5/30/00.  But, the IRS denied those claims on statute of limitations grounds -- that since WRJ paid those taxes from 1994-1996, *see infra* note 2, it simply waited too long to try and get them back even if it is otherwise entitled to them because of the late assessment.  In so doing, the IRS relied on 26 U.S.C. § 6511, under which claims

> for credit or refund of an overpayment of any tax ... in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later.

WRJ's year 2000 refund applications, then, placed it beyond the 2-3 year limit for recovering any 1993-95 "overpayments."

Unsatisfied, WRJ brought this refund action, arguing that, in light of § 6401(a)'s definition of "overpayment," § 6511's statute of limitation did not bar its recovery because the IRS did not assess its 1993-1995 employment taxes until 6/99.  In other words, no "overpayment" occurred until the IRS made its assessment in 1999, so it would be unfair to apply the 2-3 year limitations statute.  Therefore, WRJ argues, the court should deem § 6511's statute of limitations tolled until 1999, thus making its 2000 refund claim timely.

4

## III. Analysis

We review *de novo* subject-matter jurisdiction dismissals such as that which occurred here. *Broward Gardens Tenants Assoc. v. United States Env't Protection Agency*, 311 F.3d 1066, 1072 (11th Cir. 2002); *Ochran v. United States,* 273 F.3d 1315, 1317 (11th Cir. 2001).

We must first decide whether § 6401(a) operated to create an "overpayment" of taxes. A literal reading of that statute supports WRJ's claim that an "overpayment" occurred. It provides that "'overpayment' includes that part of the amount of the payment of any internal revenue tax which is *assessed ... after* the expiration of the period of limitation," 26 U.S.C. § 6401(a) (emphasis added), which in this case is § 6501. Again, the IRS did not assess WRJ's 1993-1995 tax liability until 1999.

But WRJ paid the taxes it now seeks to recover as the liabilities accrued (on a monthly basis from 1993-1995) well before the running of § 6501's limitation period. So the question, then, is whether those payments, properly owed and paid within the limitations period, somehow became "overpayments" merely because the IRS did not get around to assessing liability for them until after the limitations period expired.

While this is a first impression question for our circuit, others have consistently answered it in the negative. *See Ewing,* 914 F.2d at 500-04 (4th Cir. 1990); *Moran v. United States,* 63 F.3d 663, 666 (7th Cir. 1995), *overruled in part by Malachinski*

5

*v. Comm'r*, 268 F.3d 497 (7th Cir. 2001); *Crompton & Knowles Loom Works v. White*, 65 F.2d 132, 133-34 (1st Cir. 1933) (interpreting § 6401's predecessor statute). We join those circuits by holding that, notwithstanding § 6401(a)'s language, an untimely assessment of taxes otherwise properly owed and paid within the statutory period for assessment and collection does not create an "overpayment" entitling the "late-assessed" taxpayer to a refund.

Under the principles established in *Lewis v. Reynolds*, 284 U.S. 281, 282 (1932), "a taxpayer's claim for refund must be reduced by the amount of the correct tax liability for the taxable year, regardless of the fact that the Commissioner can no longer assess any deficiency for the taxable year." *Bachner v. Comm'r of Internal Revenue*, 109 T.C. 125, 130 (1997), *aff'd*, 172 F.3d 859 (3rd Cir. 1998) (Table)). To accept WRJ's proposition -- that it can recover undisputably owed taxes that have already been rightly and timely paid -- would directly fly in the face of that tax jurisprudence.

Put another way, WRJ "owed taxes, and the government's failure to assess them timely does not change that fact." *Moran*, 63 F.3d at 666. We have been shown no convincing legal reason why WRJ should be allowed to recover what it owed and has already properly paid simply because the IRS was lax in it responsibilities. Section 6501 simply strips "the United States ... [of] authority to collect [further] tax

6

forcibly after the applicable period for assessment has expired." *Ewing,* 914 F.2d at 503-04. It does not mean that a taxpayer can recover taxes already correctly owed and paid.

Moreover, "an assessment is not a prerequisite to tax liability ... only a formal determination that a taxpayer owes money.... It is more or less a bookkeeping procedure .... but it is neither the beginning nor the end of tax liability." *Moran*, 63 F.3d at 666 (internal citation omitted). That the assessment here was made late therefore does not change the fact that the taxes were justly owed and paid, so it would be nonsensical to allow a taxpayer to recover those taxes now.

Also, WRJ's attempt to distinguish *Lewis, Moran*, and other authority is unavailing. The technical factual distinctions pointed out by WRJ do not alter or render inapplicable the legal propositions on which we rely here, for they are based on policy considerations, not facts specific to those cases.

Finally, our conclusion that WRJ is not entitled to a refund by the operation of § 6401(a) obviates the need for us to rule on its argument that § 6511, the statute of limitations for the bringing a refund claim, should be tolled until the IRS made its assessment.[2]

---

[2] We otherwise would find little merit to that argument. WRJ would have us equate the phrase "from the time the tax as paid" in § 6511(a) to § 6401(a)'s time of assessment or collection. A similar argument, however, was rejected in *United States v. Dalm*, 494 U.S. 596, 609 n. 7 (1990) (the

7

## IV. Conclusion

To summarize, if a taxpayer duly pays its taxes (even if in an amount latter determined to be deficient) but is not timely assessed for the same, then the IRS is barred from collecting any tax deficiencies. However, that same untimely assessment does not also entitle the taxpayer to a refund, unless, of course, it actually paid more than it owed (as indicated by the assessment) and timely files a refund claim. Accordingly, the judgment of the district court is ***AFFIRMED***.

---

limitations clock runs from when a tax payment is tendered, not when it is determined that the tax is owed, *i.e.,* assessed). Indeed,

> [t]he most sensible interpretation of § 6511(a) is that a tax is paid when the taxpayer tenders payment of the tax to the IRS, not when the taxpayer discovers that the payment was erroneous. That a taxpayer does not learn until after the limitations period has run that a tax was paid in error, and that he or she has a ground upon which to claim a refund, does not operate to lift the statutory bar.

*Id.* at 609-10 n. 7.